SUCCESSION OF ANTHONY "TONY" NEIL SERIO

NO. 23-CA-539

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 844-186, DIVISION "P"
HONORABLE LEE V. FAULKNER, JR., JUDGE PRESIDING

October 09, 2024

**TIMOTHY S. MARCEL**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and Timothy S. Marcel

<u>**AFFIRMED**</u>
   **TSM**
   **FHW**
   **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
SALVADORE "SAL" JOHN SERIO, JR.
Frank J. D'Amico, Jr.
Charles P. Ciaccio

COUNSEL FOR INTERVENOR/APPELLEE,
JANE MARIE BRUN AND ELIZABETH HARTE
M. Elizabeth Bowman
Christy M. Howley
JordanT. Giles

**MARCEL, J.**

In this case arising from the succession of decedent Anthony "Tony" Neil Serio, petitioner Salvadore "Sal" John Serio, Jr., his brother, appeals the judgment of the trial court denying his petition to file, probate, and execute an olographic testament and for possession and denying his motion for a new trial. For the following reasons, we affirm the judgments of the trial court.

FACTS AND PROCEDURAL HISTORY

On August 9, 2023, Sal Serio filed a petition to probate and execute an olographic testament executed by his brother, Tony Serio, who died January 31, 2023. At the time of his death, Tony was divorced with no children and his estate consisted entirely of his separate property. According to the sworn detailed descriptive list, Tony's estate consisted of only his retirement benefits ($5,500), the inheritance he was to receive as part of his father's succession ($101,782), and some legal fees owed in connection with the succession (-$5500). Sal attached a copy of the purported olographic testament to his petition: the handwritten note states in its entirety, "Note: Make Sal my Beneficiary to get my stuff. 11-9-22 - Tony Serio". There is also a signature of Sal Serio dated 11-22-22. Sal included with this petition an affidavit of proof of olographic testament wherein Sal Serio and his mother Cassandra Gail Serio attested that the olographic testament was entirely written, dated, and signed in the handwriting of Tony Serio.

On August 11, 2023, the trial court issued judgment declaring the purported olographic testament invalid and absolutely null, denying further relief requested, and ordering Sal Serio to amend his pleadings and proceed via intestacy. In his written reasons for judgment, the trial court stated that the document fails to establish the necessary testamentary intent because it was captioned as a "note" and uses the words "stuff" and "beneficiary". The court found no clear intent that decedent was disposing of his assets upon his death.

Sal Serio filed a motion for a new trial from this ruling. Shortly thereafter, a "Petition to Intervene, To Open Succession under Regular Administration, To Be Appointed Executor, To Compel Return of All Succession Assets, and Memorandum in Opposition to Motion for New Trial" was filed by Tony Serio's half-siblings, Jane Marie Brun and Elizabeth Harte, as intestate heirs of decedent. Jane Brun represented that she was also administering the estate of their deceased father, Salvadore J. Serio, Sr., who died on May 23, 2021.

A hearing on the motion for new trial was conducted on September 7, 2023, at which time the court heard testimony from decedent's mother, Cassandra Serio. No other new evidence was introduced. The court took the matter under advisement, and on September 26, 2023, issued a judgment denying the motion for a new trial. Sal Serio's timely appeal followed.

On appeal, Sal Serio argues that the trial court erred in both its denial of his initial petition to probate the olographic testament and in its denial of the motion for a new trial on the basis that the olographic will lacked testamentary intent. Specifically, appellant claims that the use of the word "beneficiary" indicates an intent to bequeath all of decedent's assets. We consider this argument in our discussion below.

## DISCUSSION

An olographic testament is one entirely written, dated, and signed in the handwriting of the testator. La. C.C. art. 1575. The document itself must establish testamentary intent. *Succession of Carroll*, 08-89 (La. App. 5 Cir. 6/19/08), 988 So.2d 778, 781. Extrinsic or parole evidence cannot be used to establish testamentary intent. *Id.* In the absence of testamentary intent, there is no will. *In re Succession of Boada*, 13-234 (La. App. 5 Cir. 11/19/13), 130 So.3d 350, 352. The olographic testament must be proved by the testimony of two credible witnesses that the testament was entirely written, dated, and signed in the testator's

handwriting. La. C.C.P. art. 2883. In will contest cases, absent a finding of manifest error, the factual findings of the trial court are accorded great weight and will not be disturbed on appeal. *Succession of Olsen*, 19-348 (La. App. 5 Cir. 1/29/20), 290 So.3d 727, 734, *writ denied*, 20-00362 (La. 6/3/20), 296 So.3d 1067.

The appellate standard of review of the ruling on a motion for a new trial is whether the trial court abused its discretion. *Giglio v. ANPAC Louisiana Ins. Co.*, 20-209 (La. App. 5 Cir. 12/23/20), 309 So.3d 416, 422. A new trial should be granted, upon contradictory motion, where: 1) the verdict or judgment is contrary to the law and evidence; 2) important evidence is obtained after the trial; or, 3) the jury was either bribed or behaved improperly. *Id.* Under La. C.C.P. art. 1973, a new trial may be granted if there is good ground therefore, except as otherwise provided by law.

We turn now to the question of testamentary intent. In his written reasons for judgment, the trial court stated the following regarding testamentary intent:

> Reading the document as a whole, the Court finds that the document fails to establish the necessary testamentary intent. The handwritten note is captioned as a note. The writing fails to convey that it is a last will and testament in any way. There is no clear intent that Decedent was disposing of his assets when he dies. The document uses the word "beneficiary." There is no clear intent that Decedent was disposing of his assets when he dies. The document uses the word "stuff."

Contrary to the trial court's finding, appellant argues that the purported testament clearly evidences decedent's intent in at least four ways. We address these arguments in turn.

Appellant claims the first indication of testamentary intent is decedent's use of the word "beneficiary," where he writes, "make Sal my beneficiary to get my stuff." Appellant cites the definitions of "beneficiary" from Black's Law Dictionary, ("[o]ne for whose benefit a trust is created,") and Webster's dictionary, ("a person or thing that receives help or advantage from something: one that

benefits from something" or "the person designated to receive the income of an estate that is subject to a trust" or "the person named (as in an insurance policy) to receive proceeds or benefits.") We do not believe these definitions support appellants claim that decedent's use of the word "beneficiary" indicates a clear intent for his brother to be the one to benefit from his stuff after death. None of the definitions provided mention death; instead, they provide examples of the many ways the word "beneficiary" can be used in situations besides testaments. The use of the word "beneficiary" in this instance provides no indication that decedent intended his brother to be the beneficiary of all of his "stuff" (or property) at his death.

Next, appellant argues that the fact that decedent signed and dated the document is an indication of testamentary intent. According to appellant, the very act of signing and dating a document indicates an intent for the document to have some legal effect, as this is not something a person does when making a note to himself. Appellant cites no case law in support of this claim. While the date and signature are evidence that certain mandatory requirements of form for an olographic testament may have been met, we do not find that the date and signature are evidence of testamentary intent. People sign and date many documents that are not intended to have legal effect (e.g. letters, birthday cards.) What decedent intended by signing and dating this "note" is not clear on its face.

Appellant claims next that the third indication of testamentary intent is the decedent's desire to dispose of *all* of his "stuff" and not just some of it. Appellant argues that a reasonable person rarely attempts to give away all of his "stuff" prior to his death, and that a reasonable person generally understands that all of his possessions must go to someone after he passes away. Appellant's argument makes use of language that is not in the testament, which states only "my stuff" not "all of my stuff". The word "stuff" itself is unclear. According to the sworn

descriptive list provided by appellant, decedent's "stuff" consisted only of a Domino's pizza retirement benefit and the inheritance he was to receive from his father's estate. It is unclear from the record whether decedent was in possession of his inheritance at the time this note was drafted or whether he meant to include that inheritance with his use of the phrase "my stuff."

Finally, appellant claims the fourth indication of decedent's clear testamentary intent is the lack of any precatory expressions or words requesting or praying that a thing be done. We agree that the purported testament lacks precatory expressions, but we do not find this to be positive evidence showing testamentary intent.

We find appellant's arguments unpersuasive and insufficient to show that the trial court manifestly erred in determining there was no testamentary intent. Testamentary intent must exist when the instrument is executed and must apply to the particular instrument produced as a will. *In re Succession of Rhodes*, 39,364 (La. App. 2 Cir. 3/23/05), 899 So.2d 658, 660. A paper is not established as a person's will merely by proving that he intended to make a disposition of his property similar to or even identically the same as that contained in the paper; it must satisfactorily appear that he intended the very paper to be his will. *Id.* (citing *Succession of Patterson*, 188 La. 635, 177 So. 692 (La. 1937)). We agree with the trial court that there is not clear intent by the testator that he intended this "note" to be his will, and we find the trial court's ruling denying the petition to probate the purported olographic testament to be correct. We further find that the trial court did not abuse its discretion in denying the motion for a new trial.

AFFIRMED

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 9, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**23-CA-539**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. LEE V. FAULKNER, JR. (DISTRICT JUDGE)
CHARLES P. CIACCIO (APPELLANT)          FRANK J. D'AMICO, JR. (APPELLANT)          CHRISTY M. HOWLEY (APPELLEE)
JORDAN T. GILES (APPELLEE)               M. ELIZABETH BOWMAN (APPELLEE)

**MAILED**