LE BLANC, Justice.
 

 This case presents the ever recurring problem before the Courts where there is a contest over a will which allegedly contains a disposition that is prohibited under our law and is therefore invalid. Another issue concerns the appointment of an administrator or executor to the estate. The law having reference to dispositions such as are reprobated is found in Article 1520 of the LSA-Civil -Code, which reads in part as follows:
 

 
 *1063
 
 “Substitutions and fidei commissa are and remain prohibited.
 

 “Every disposition by which the donee, the heir, or legatee is charged to preserve for or to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee. * * * ”
 

 In order to better understand the issues that are presented in this case it is appropriate that we should state how they came to be presented to the Court.
 

 Thomas Johnson, the testator, died at his domicile in the City of New Orleans on April 27, 1952. He had been married twice, his first marriage having been contracted with Mrs. Fern Wiggs who preceded him in death. Of this marriage there was born one child, a son, Robert T. Johnson. After his first wife’s death he contracted a second marriage with Mrs. Sue Wiggs, her sister, and of this marriage there was born one child, a daughter, Martha Jane Johnson, married to Anton Erickson.
 

 He left an estate at the time of his death consisting of stocks, bonds, and other securities and also a piece of real estate, with buildings, and improvements and certain household furniture and belongings.
 

 • On May 6, 1952, his son, Robert T. Johnson, applied to the Civil District Court for the Parish of Orleans for letters of administration on the estate of his father and asked that an inventory and appraisement be taken and made of the property left by him.
 

 On May 12, 1952, Mrs. Sue Wiggs, the widow, petitioned the Court setting forth that it had been the desire of her deceased husband that Louis C. Philips, attorney-at-law who had been representing him for some time should handle the affairs of his estate as attorney and notary and that such being his desire and hers as well, she represented to the Court that letters of administration should be issued to her upon her complying with the requisites of the •law and that the said Louis C. Philips should handle the estate in its entirety as attorney and as notary public. Accordingly she prayed that Robert T. Johnson be ordered to appear in Court to show cause why her application should not be recognized in preference to his and why the said Louis C. Philips should not be recognized as the attorney and notary to handle the affairs of the succession. She further prayed that the order for publication of letters of administration granted on the petition of the said Robert T. Johnson be set aside and vacated pending the hearing of the rule to show cause and after legal delays an inventory be taken in the manner and form prescribed by law by Louis C. Philips, Notary Public.
 

 Whilst the petition of Mrs. Sue Wiggs makes no reference to a will having been .executed by her deceased husband, it is apparent from the order signed by the district judge on the same day that the petition was
 
 *1065
 
 filed that a will was presented to him because in the said order he directs “that the olographic will executed and filed herewith be and the same is hereby found to have been proved to be the last will and testament of the decedent; and that same is hereby ordered executed.”
 

 On May 23d 1952, Robert T. Johnson again appeared in Court, and filed a petition seeking to annul the will which had been ordered executed, averring that the whole of the said will is illegal null and void under the provisions of the Civil Code of Louisiana and according to the established jurisprudence of this Court. The will as quoted in full in his petition reads as follows:
 

 “New Orleans, La.
 

 “Nov. 2-51
 

 “To whom may consern
 

 “I, Thomas Johnson do make this my Will and do here by leave evything to my wife Sue W. Johnson as long as she live and then she is to leave her step son Robert Thomas Johnson just of the Share of what is left — and Martha Jane my only Daughter the rest. At my death Sue W. Johnson shall be the admistor of this will in my own writing at 3 P.M. Nov. - 2-51
 

 “(s) Thomas Johnson”
 

 On the same day he filed his answer- to the rule taken by Mrs. Sue Wiggs Johnson to show cause why her application for letters of administration should not be recognized in preference to his own' application. In his answer he denied all of the allegations relating to the desire of his deceased father to have Louis C. Philips handle the affairs of his estate and he again attacks the last will and testament presented to the Court as being in contravention of the Articles of the LSA-Civil Code and further he avers that there is no executor named in the said will and no seizin of the estate given to any one thereunder. He prays for judgment recognizing his legal right to be appointed administrator of the estate and that the original order issued to have the inventory taken be reinstated.
 

 On May 28, 1952, Mrs. Sue Wiggs Johnson filed an exception of no cause or right of action to the petition of Robert T. Johnson to have the will annulled. She was joined in this exception by her daughter, Mrs. Martha Jane Johnson, wife of Anton Erickson. The exception brought the direct issue of the validity of the will before the Court; and it otherwise involved all of the pleadings relating to the appointment of an administrator or of an executor, depending upon whether the will was upheld or not. After trial in the District Court there was judgment in favor of Mrs. Sue Wiggs Johnson and Mrs. Martha Jane Johnson and against Robert T. Johnson maintaining the exception of no right or cause of action and dismissing the petition seeking to have the whole will of the decedent annulled. It was further ordered that' letters; testamentary issue to Mrs. Sue Wiggs -Johnson, without
 
 *1067
 
 bond and also it was ordered that the rights of Robert T. Johnson and Martha Jane Johnson, as children and heirs of the decedent be reserved to them to be asserted in the proceedings. From that Judgment Robert T. Johnson was granted and is prosecuting this appeal.
 

 In approaching a decision of the first issue it becomes necessary to consider the language of the will in connection with the provisions of Article 1520 of the LSA-Civil Code quoted at the beginning of this opinion.
 

 Whilst that article at first blush would seem to indicate that substitutions and fidei commissa are one and the same thing and affect the validity of the will in the same manner, it is undoubtedly settled by the jurisprudence of this State that there are differences between them and that it is very important to note the difference because in cases of prohibited substitutions the whole will is stricken with nullity whereas in cases of fidei commissa, it is only those dispositions which, are tainted with that designation that are invalid. Under the provisions of Article 1519 of the LSA-Civil Code which provides that “In all dispositions inter vivos and mortis causa impossible conditions, those which are contrary to the laws or to morals, are reputed not written,” they are considered as having no binding effect and may be legally regarded as not written.
 

 In Succession of Reilly, 136 La. 347, 67 So. 27, one of the leading cases on the subject, the Court pointed out the distinction between substitutions' and fidei commissa and the differences in their effect. On page 363 of 136 La., on page 32 of 67 So. we find the’ Court stating- as follows:
 

 “The essential elements of the prohibited substitution are that the immediate donee is obliged to keep the title of the legacy inalienable during his lifetime, to be transmitted at his death to a third person designated by the original donor or testator. Such a disposition is null even with regard to the original donee or legatee. In the fidei commissum, whereby the donee or legatee is invested with the title and charged or directed to convey it to another person or to make a particular disposition of it, only the charge of direction, as to the ultimate disposition of the donation or legacy, is null and is to be considered not written, leaving the donation or bequest valid as to the donee or legatee. A substitution is an attempt on the part of the donor or testator to make a testament for his donee or legatee along with his own will, and to substitute his own will for the legal order of succession from his donee or legatee. If permitted, the effect of a substitution would be to tie up the title and keep it out of commerce during the lifetime of the first donee, during which time neither he-nor the person designated to receive the-title at the donee’s death could alienate
 
 *1069
 
 it. A substitution is necessarily a fidei commissum, but a fidei commissum is not necessarily a substitution. ' In ■ the fidei commissum the title is not tied up or kept out of commerce; the direction or charge, as to its disposition, is to be regarded only as a precatory suggestion addressed to the conscience of the donee or legatee, which, being illegal, but harmless, can have no binding effect, and may be legally regarded as not written.”
 

 It strikes us that the important words in Article 1520 of the LSA-Civil Code with regard to the nullity of the dispositions therein prohibited are those by which the donee or legatee “is charged to preserve for or to return a thing to a third person”.
 
 [1]
 
 If the donee or the legatee is charged to preserve a thing for a third person, obviously he cannot dispose of it or dissipate it in any manner. The effect of such a disposition is, as was said in Succession of Reilly, supra, to tie up the title to property and keep it out of commerce during the life time of the first donee. That is principally the reason why such dispositions properly called “substitutions”, are prohibited by the Article of the Code.
 

 It becomes necessary therefore to interpret the language of the testator’s will in this case to ascertain whether it constitutes that form of disposition.
 

 The testator used the expression “I * * do hereby leave everything to my wife'Sue W. Johnson as long as she live and then she is to leave her step son Robert Thomas Johnson just of the Share of
 
 what is left *
 
 * (Emphasis supplied.) Certainly there is no charge on.the, legatee to preserve anything for any one. Everything is left to her, as long as she lives; he bequeaths it to her and she can dispose of it, encumber it or dissipate it if she sees fit. It is only in the event that she does not so dispose of, encumber or dissipate the whole estate that she is to leave to Robert T. Johnson one-fourth of the share of
 
 what is left.
 
 The phrase
 
 what is left
 
 conveys the definite implication that title to all of the property was vested in the legatee and it was the intention of the testator to create such a title for her benefit to the exclusion of all other persons.
 

 In Dufour v. Deresheid, 110 La. 344, 34 So. 469, the Court had before it for construction the disposition of a will written in French, the translation of the pertinent part of which reads as follows:
 

 “I declare I have brought in marriage the sum of six thousand, five hundred dollars.
 

 “I institute as my universal legatee my wife, Katharina Deresheid, to whom I give and bequeath the totality of the property which I shall leave on the day of my decease.
 

 
 *1071
 
 “At the death of my wife, I desire that, after deduction made of the above sum of six thousand, five hundred dollars which shall be paid to my natural heirs, the balance of what she will leave on the day of her decease shall be divided equally between my natural heirs and her own.”
 

 The disposition is one which we think bears a close resemblance to the one in the case now before us because the words “ ‘the balance of what she will leave on the day of her decease’ ” have the same meaning as the words “she is to leave her step son Robert T. Johnson just % of the share of what is left”, contained in the will in this case. In that case the Court stated:
 

 “It is clear that this is not a disposition by which the legatee is charged to preserve for and return a thing to a third person or persons.
 

 “The estate, under this will, is given outright, in full ownership, to the wife. She may do as she pleases with it. She may expend the funds on hand, sell the movables and immovables, reinvest their proceeds, or use the same as she otherwise may wish. No charge is imposed upon her to
 
 preserve
 
 any thing.
 

 “If, however, at her death anything is left of the estate, the will expresses the wish that his natural heirs be given the sum of money he had brought into the marriage, and whatever else remained, after paying them such sum, that the same be given equally to his and her heirs.
 

 “It is not a bequest to his and her heirs. The legatee is not charged to preserve $6,500.00 for his natural heirs which they are to take
 
 under the terms of the will
 
 at her death. Neither is she required to preserve any part of the estate for his and her natural heirs, the which they should take
 
 under the will
 
 at her death.
 

 “As they (his natural heirs) take nothing under the will, they could take the estate left at her death only what she, following the expressed wish of her husband, might in her will bequeath ' to them. And if she made no will naming them as legatees, her heirs would take the estate under the law of inheritance.”
 

 That is a statement of the law as it may well be applied in the present case.
 

 Another case which we think bears a similarity to the one at bar is that of Succession of Heft, 163 La. 467, 112 So. 301. The will in contestation there contained the following disposition:
 

 “ * * * I desire that all that I die possessed of, jewelry, clothing, investments, money in bank, or otherwise invested, to go to my only sister P. Barbara Heft to enjoy with interest thereof during her lifetime, after her .death whatever may be left to be divided in three (3) equal parts (%) One
 
 *1073
 
 third thereof to be equally divided between my then living brothers, *
 

 Whilst it is true that there was no contention that the will contained a prohibited substitution and the very question presented by one of the parties was that the language of the will was such as to convey only the usufruct of the estate to the legatee and the ownership of one-third of the estate to other parties named therein, the Court did go into a discussion of what constituted prohibited substitutions and fidei commissa and again pointed out the difference between them. It stated also that they are essentially different from the giving of the usufruct to one legatee and the ownership to another, which is expressly permitted by Article 1522 of the LSA-Civil Code. Continuing its discussion the Court stated further: “All that the court has to decide in cases like this is whether the testator expressed in his will the intention to give the property itself or only the usufruct to the first legatee. We agree with the judge of the civil district court that the intention expressed in this will was to give to the sister of the testatrix, not merely the usufruct of the estate, but the estate itself, with the wish — or bequest if you, will — that whatever might be left of it in the possession of the legatee at the latter’s death should go to the other persons and the two institutions named in the will. We •construe the expression, ‘After her death whatever may be left to be divided in three (3) equal parts,’ etc., to mean that the sister might dispose of any or all of the property during her lifetime if she saw fit; which means that the property was given to her in full ownership with the request that she should distribute as directed whatever she might have of it at her death.” The Court then went on to state why the expression in the will “to enjoy with interest thereof” did not express the intention to give only the usufruct of the estate, with which expression, of course, we are not concerned in this case as the will herein involved contains no statement or expression intimating that the property may have been left for the legatee’s use or enjoyment. This, we believe also makes it unnecessary for us to discuss the idea suggested by counsel for appellant that certain language in the opinion in the case, Succession of Hall, 141 La. 860, 75 So. 802, may have created some confusion in construing Articles 1520 and 1522 of the Code.
 

 There is a recent case decided by this Court which also bears on the subject of substitutions and fidei commissa. That is the case of Girven v. Miller, 219 La. 252, 52 So.2d 843, 844 in which it was specifically held that a will which contained a disposition reading: “I leave all I die possessed of to Rev. William A. Miller, CSSR. to be disposed and administered according to my typed instructions,” constituted a bequest that was absolute and constituted Father Miller as universal legatee of the estate and was not rendered conditional, merely because of the language
 
 *1075
 
 which followed it, namely, “to be disposed [of] and administered according to my typed instructions”. The Court stated with regard to this language: “These words are not limitations upon the title of Father Miller; they are expressions of the testator’s wish or request which, under familiar rules of interpretation of testaments, are to be viewed as a precatory suggestion addressed to the conscience of the legatee but which is ‘not binding in law and cannot affect the validity of'the bequest of the estate to him.’ See Succession of Hall, 141 La. 860, 75 So. 802, 803, and authorities there cited.”
 

 Our conclusion on this issue in the present case is that the disposition made by the testator to the donee, Mrs. Sue W. Johnson, constituted a legal and valid bequest to her and conveyed a valid title to all the property bequeathed to her. The mere fact that the disppsition reads that it was left to her “as long as she lived” does not affect the bequest or qualify it in any manner as is suggested by counsel for appellant; manifestly the testator could not leave her “everything” as he did for any longer period of time. The will does not contain a prohibited substitution which renders it totally null. The language to the effect' that the legatee is to leave to other persons “what is left” constitutes a fidei commissum which, under the. provisions of Article 1519 of the LSA-Civil Code are reputed as not written. That was the conclusion reached by the trial judge which we thoroughly approve.
 

 The other issue in the case is the one which relates to the appointment of an administrator or executor of the decedent’s succession.
 

 That the testator intended that some one should execute his will is made positive by his appointment of Sue W. Johnson to that office. It is true that the. language he used is inartistic but it leaves no doubt as to his intention. He stipulated that “at my death Sue W. Johnson shall be admistor of this will * * The power to appoint an “administrator” to a succession is vested in “the judge of the place where the succession is opened * * Art. 1041 LSA-C.C. A testator-therefore is without right to appoint an “administrator” as such. But where his intention is so clearly expressed and he has appointed some one to take charge of his estate at the time of his death the Courts' will not thwart his intention merely because being a person unlearned in the law and in this case one of apparent limited education, he used the improper designation of the office in making the appointment. This precise point has never been presented to this Court but was considered and passed on by the Court of Appeal for the Parish of Orleans in Succession of Rassat, 157 So. 412, a case very similar in this reT spect to the one at bar. The Court quoted with approval from Corpus Juris, Vol. 23 Verbo: “Executors and Administrators”, as follows:
 

 
 *1077
 
 “It is not necessary to the designation of an executor that the word ‘executor’ should he used, but any words which substantially confer upon a person, whether expressly or by implication, the rights, powers and duties of an executor, amount to a due appointment under the will; and the person thus clothed with the essential functions of the office is said to be an executor under the will according to the tenor.”
 

 This very same statement is carried in 33 C.J.S., Executors and Administrators, § 22 and there we find this further pertinent remark:
 

 “Thus one to whom the essential powers and duties of the office of executor are committed by the will is to be deemed an executor although the testator may have miscalled his appointee, as by calling him an administrator, custodian, guardian, or trustee.”
 

 The further point raised by counsel for appellant that the appointment of the executrix cannot stand because she was not given seizin of his estate by the testator is properly disposed of by the trial judge when he states in his written reasons for judgment as follows:
 

 “The second paragraph of Article 1660 of the Louisiana Civil Code of 1870 states as follows:
 

 “ ‘But if the executor testamentary be merely appointed testamentary executor, without any other power, his functions are confined to see to the execution of the legacies in the will, and to cause the inventory and other conservatory acts of the property to be made.’
 

 “While is is true that in Succession of Patterson, 188 La. 113, 175 So. 820, the court in dicta indicated that an ^executor without seizin does not have broad powers of administration over the estate of the de cujus, still it should be noted that the will in the Patterson case covered only part of the property left by the decedent, and did not name anyone as executor, with or without seizin. Furthermore, Article 1660 gives limited powers of administration to an executor without seizin. And since the only heir validly named in the will is also named executrix, the Court is of the opinion that the absence of seizin would not affect the administration of the succession, and there is no necessity for the appointment of an administrator in addition to the executor named in the will.
 

 “The Court is of the opinion that Mrs. Sue W. Johnson is entitled to have letters testamentary issued to her under the will of her late husband, Thomas Johnson, without bond.”
 

 We are of the opinion that the judgment appealed from is correct and for the reasons herein stated, it is affirmed at the costs of the appellant.
 

 [1]
 

 . According to the Editors of Louisiana Legal Archives, the -word
 
 or
 
 as used in this phrase should have been translated
 
 and,
 
 the phrase should therefore read to “preserve for and to return a thing to a third person’,’.-